# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

DARREN RICHARDSON,

      Plaintiff,

      v.

PRISONER TRANSPORT
SERVICES OF AMERICA, et al.,

      Defendants.

CIVIL ACTION NO. 3:15-cv-01061

(CAPUTO, J.)
(SAPORITO, M.J.)

## REPORT AND RECOMMENDATION

This is a civil rights action, initiated upon the filing of the complaint in this matter on May 29, 2015. (Doc. 1). An amended complaint was filed as a matter of right on July 23, 2015. (Doc. 9). In his amended complaint, the plaintiff alleges violation of his federal civil rights while being transported by defendant Prisoner Transport Services of America ("PTS") from Florida to Pike County, Pennsylvania, pursuant to a contract between PTS and defendant Pike County. He also asserts state law claims of negligence, assault and battery, and intentional infliction of emotional distress. The County Defendants[1] have moved to dismiss the amended

---

[1] The County Defendants are: the municipal government of Pike County, Pennsylvania; the Pike County Board of Commissioners; County

*(continued on next page)*

complaint in part pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 11). This motion has been fully briefed and is ripe for disposition. (*See* Doc. 12; Doc. 18; Doc. 23).[2]

## I.   FACTS ALLEGED AND JUDICIALLY NOTICED

In September 2008, Richardson pleaded guilty and was convicted of a misdemeanor offense in Pike County, Pennsylvania. *Commonwealth v. Richardson*, Docket No. CP-52-CR-0000124-2007 (Pike County C.C.P.).[3] He was sentenced to serve a twelve-month term of probation. *Id.* In July 2009, a bench warrant for Richardson's arrest was issued for an unspecified violation of probation. *Id.* According to the amended complaint, the bench warrant was issued for Richardson's failure to pay $250 upon completing probation.

On May 29, 2013, Richardson was the subject of a traffic stop by

---

Commissioner Richard Caridi; County Commissioner Matthew M. Osterbert; County Commissioner Karl Wagner; Warden Craig A. Lowe, warden of the Pike County Correctional Facility; Assistant Warden Jonathan J. Romance; and Assistant Warden Robert E. McLaughlin.

[2] Defendant PTS is not a party to the motion to dismiss. It has appeared through separate counsel and filed an answer. (Doc. 22).

[3] This publicly available state criminal docket, available online at https://ujsportal.pacourts.us/DocketSheets.aspx, is a public record of which the Court may take judicial notice in ruling on a motion to dismiss. *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967).

police in Florida, where he resides. He was arrested and taken into custody by Florida police due to the outstanding bench warrant issued by the Pennsylvania court. He was incarcerated in a local jail for eight days while awaiting extradition to Pennsylvania.

On or about June 5, 2013, Richardson was transferred to the custody of PTS, which had been contracted by Pike County to transport him from Florida to the Pike County Correctional Facility in Lords Valley, Pennsylvania. According to the amended complaint, Richardson's criminal defense attorney paid the $250 fine before Richardson entered the custody of PTS.

From June 5, 2013, through June 15, 2013, Richardson remained in the custody of PTS, the employees of which transported him through Alabama, Mississippi, Georgia, Tennessee, Kentucky, West Virginia, New Jersey, New York, and Pennsylvania en route to the Pike County Correctional Facility.

On June 5, 2013, Richardson was taken into custody by PTS employees, placed in leg irons and shackles, and transported for several days on a prisoner transport bus. The bus where Richardson was held contained three 3-foot by 5-foot cages, two sleeping bunks, and seats

located to the rear of the bus. During his transport, Richardson allegedly did not go to the bathroom in any fashion for six days, he did not eat anything for four days, and at one point he was given an empty food bag. Upon boarding the bus, a PTS sergeant allegedly asked Richardson for his jewelry in return for a pleasant ride. Richardson alleges that he was given no food because he refused to surrender his jewelry to the sergeant. During the trip, the PTS guards allegedly took debit cards from inmates and used them at gas stations to purchase cigarettes and other items. At one point during the trip, a guard allegedly entered the cage in which Richardson had been placed and forced a shotgun to his head. At another, the PTS sergeant allegedly urinated on Richardson.

Eventually, in Kentucky, Richardson was permitted to disembark from the bus at a local jail, where he was to be housed overnight and transferred to another, smaller vehicle, apparently because the bus was too large to maneuver the streets of New York City. Instead of being given an opportunity to sleep in a bed, Richardson was stripped naked, dressed in a prison jumpsuit, placed in a day room for thirty minutes, and then given his clothes back and placed on a transport van. At that time, Richardson had difficulty walking due to lack of circulation in his shackled

legs.

The transport van in which Richardson departed Kentucky had two benches down either side of the vehicle's interior with a cage in the middle to separate male and female prisoners. Twelve prisoners were placed in the van, and due to the size of the van, they were unable to move their legs during transport. The condition of Richardson's legs allegedly began to deteriorate due to lack of circulation. The prisoners were not allowed to stand or walk and remained in the same position in the van for three days.

When Richardson arrived at Pike County Correctional Facility on June 15, 2013, the amended complaint alleges that his legs were purple from the knee down and his feet were black. A transport guard known as "Miss Kay" questioned Richardson about his time on the bus. She asked him about the use of inmate debit cards, the request for Richardson's jewelry, the use of racial slurs, and other occurrences, with her questions suggesting that she already knew what had occurred on the initial leg of his trip on the transport bus. While Richardson was being processed into the Pike County Correctional Facility, Miss Kay warned the guards to be careful with him because he had had a "bad experience." She also advised Richardson that the PTS sergeant from the bus had told her "he would

never put his boot on the neck of a man on the ground again," that she had informed the company of the incident, and that the company planned to put a "plant" on the bus in the future to deter future abuse.

When Richardson was able to receive medical attention at the Pike County Correctional Facility, the nurse who treated him stated that they "had seen much worse come off that bus." The nurse took no photos of Richardson's injuries.

Richardson later appeared before the Pike County court for probation revocation proceedings. *Commonwealth v. Richardson*, Docket No. CP-52-CR-0000124-2007 (Pike County C.C.P.). His probation was revoked and he was sentenced to serve a term of forty days to six months in jail, with credit for time served beginning May 29, 2013. *Id.* He was subsequently granted parole by the court effective July 6, 2013. *Id.*

The amended complaint alleges that Richardson suffered physical, mental and emotional, and pecuniary injuries as a result of the conditions of his transport from Florida, for which he seeks to recover compensatory and punitive damages from the defendants. Richardson claims that the County Defendants are liable for his injuries pursuant to a municipal policy of engaging the services of PTS to transport prisoners from out of

state, and that the County Defendants knew or should have known of the wrongful acts or omissions of PTS and its employees, which Richardson claims violated his Eighth and/or Fourteenth Amendment rights. Richardson further asserts a state law negligence claim against the County Defendants for this same conduct by PTS and its employees.

## II.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

## III.  DISCUSSION

The County Defendants have moved for dismissal of certain of Richardson's claims on four grounds. First, the County Defendants contend that claims against the Board of Commissioners and the six

individual defendants named in their official capacities should be dismissed as redundant, as Pike County is also a named defendant. Second, the County Defendants contend that Richardson's punitive damages claim against Pike County should be dismissed because a municipality is immune from punitive damages under 42 U.S.C. § 1983. Third, the County Defendants contend that Richardson's federal civil rights claim against Pike County should be dismissed for failure to adequately allege a municipal policy that caused his injuries. Fourth, the County Defendants contend that Richardson's state law negligence claim against Pike County should be dismissed because, except for certain statutorily enumerated exceptions, it is immune from state law tort claims, under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541–8542.

### A. Official-Capacity Defendants

In addition to Pike County itself, the named defendants in the amended complaint include the county's board of commissioners, three county commissioners, and the warden and two assistant wardens of the county jail. The amended complaint names each of the individual defendants in his official capacity only.

It is well-established that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). Consequently, it is common practice to dismiss redundant § 1983 claims against official-capacity defendants when the governmental entity that employs them is also named as a defendant. *See M.S. ex rel. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 419 (M.D. Pa. 2014); *see also K.S.S. v. Montgomery County Bd. of Comm'rs*, 871 F. Supp. 2d 389, 396 (E.D. Pa. 2012) (treating claims against county board of commissioners as official-capacity claims against the individual commissioners and dismissing claims as redundant). In his opposition brief, Richardson concedes that the dismissal of his official-capacity claims against the Board of Commissioners and the six individual County Defendants is appropriate. *See M.S.*, 43 F. Supp. 3d at 430 (dismissing claims pursuant to non-movant's concession in opposition brief); *Cooper ex rel. Transp. Workers Union Local 234 v. Se. Pa. Transp. Auth.*, 474 F. Supp. 2d 720, 721 n.2 (E.D. Pa. 2007) (same).

Accordingly, it is recommended that the motion to dismiss be granted in part, all claims against official-capacity defendants Pike County Board

of Commissioners, Richard Caridi, Matthew M. Osterbert, Karl Wagner, Craig A. Lowe, Jonathan J. Romance, and Robert E. McLaughlin be dismissed, and these defendants terminated from the case.

## B. Punitive Damages Claim

The amended complaint seeks an award of punitive damages from defendant Pike County for the alleged violation of Richardson's federal civil rights.

It is well-established that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also Strickland v. Mahoning Twp.*, 647 F. Supp. 2d 422, 428 (M.D. Pa. 2009) (dismissing punitive damage claims against individual official-capacity defendants). In his opposition brief, Richardson concedes that the dismissal of his punitive damages claim against Pike County is appropriate. *See M.S.*, 43 F. Supp. 3d at 430; *Cooper*, 474 F. Supp. 2d at 721 n.2.

Accordingly, it is recommended that the motion to dismiss be granted in part and the punitive damages claim against Pike County be dismissed.

## C. Section 1983 Municipal Liability Claim

The County Defendants contend that Richardson's federal civil rights

claim against Pike County should be dismissed on the ground that Richardson has failed to identify a municipal policy or custom that caused the alleged constitutional violations by PTS and its employees.

"On its face, § 1983 makes liable 'every person' who deprives another of civil rights under color of state law." *Burns v. Reid*, 500 U.S. 478, 497 (1991) (Scalia, J., concurring in part and dissenting in part). In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court of the United States established that municipalities and other local governmental units are included among those "persons" subject to liability under § 1983. *Id.* at 690. Pike County is such a municipality subject to liability as a "person" under § 1983. *See id.* at 694; *Mullholland v. Gov't County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013).

But "[u]nder *Monell*, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 249 (3d Cir. 2007). Rather, a municipality can be liable under § 1983 only if the conduct alleged to be unconstitutional either "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even

though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690–91. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Jiminez*, 503 F.3d at 249. "A plaintiff must identify the challenged policy, attribute it to the [municipality] itself, and show a causal link between execution of the policy and the injury suffered." *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir. 1984).

In response to the motion to dismiss, Richardson argues that the county's contract with PTS for prisoner transport services is the requisite municipal policy under *Monell*. (*See* Doc. 18, at 9–10). A municipal contract such as this may indeed constitute a municipal policy within the meaning of *Monell*. *See King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012); *Graham v. County of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004); *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F. Supp. 1118, 1135 (W.D. Pa. 1980). But there is nothing in the amended complaint to suggest that this contract was the "moving force" behind the alleged abuse

visited upon him by PTS and its employees. *See Monell*, 436 U.S. at 694; *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819 (1985). As alleged, the contract was for the transport of one or more prisoners from out of state locations to Pike County Correctional Facility. Even assuming that Richardson did suffer a constitutional violation at the hands of PTS employees, the alleged abuses appear to have "resulted from factors other than a faulty [County policy]," insofar as the prisoner transport contract is concerned. *See City of Canton v. Harris*, 489 U.S. 378, 390–91 (1989); *Graham*, 358 F.3d at 384–85. "There can be no municipal liability where 'an otherwise sound program has occasionally been negligently administered.'" *Graham*, 358 F.3d at 385 (quoting *City of Canton*, 489 U.S. at 391).

But "[e]ven in the absence of formal policymaking activity, an 'official policy' may be inferred from informal acts or omissions of supervisory municipal officials . . . ." *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 (3d Cir. 1988) (citations and internal quotation marks omitted). In *Colburn*, the Third Circuit found that a complaint alleging "a custom of laxity regarding the supervision and monitoring of their jail cells and in searching individuals taken into police custody," which led to a detainee's

suicide using a hidden firearm, which was sufficient to plead an "official policy" under *Monell* and § 1983. *Id.* Notably, the complaint in *Colburn* further alleged that the plaintiff's decedent was the *third* person to commit suicide in the jail within a three-year span, providing the municipality and its governing officials with actual or constructive knowledge of the alleged custom of inadequate monitoring of jail cells. *See id.* at 672; *cf. Brown v. City of Pittsburgh*, 586 F.3d 263, 292–93 (3d Cir. 2009) (recognizing that where no explicit policy is identified, "'more proof than the single incident will be necessary' to establish a causal connection between the incident and some municipal policy").

Here, the amended complaint alleges that the county had actual or constructive knowledge of prior abusive treatment of prisoners by PTS and its employees. In particular, the amended complaint alleges that upon his arrival at Pike County Correctional Facility, Richardson requested a civil rights form from the nursing staff to document his mistreatment; the prison nurse who examined him failed to take photos to document his injuries and told Richardson that they "had seen much worse come off that bus." (Doc. 9, at 9). These factual allegations suggest that county employees were aware of a pattern of prior—and more extreme—abuse by

PTS and its employees. Taken as true, this allegation is sufficient at the pleadings stage to support an inference of actual or constructive knowledge by Pike County of the alleged custom of abusive treatment of prisoners by PTS and its employees. *See Colburn*, 838 F.2d at 672.

Accordingly, it is recommended that the motion to dismiss be denied in part and the plaintiff's § 1983 claim against Pike County be permitted to proceed.

### D. State Law Negligence Claim

The County Defendants contend that Richardson's state law negligence claim against Pike County should be dismissed because it is immune from state law tort claims such as this under Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541–8542. The plaintiff argues in opposition that his claim falls within a statutory exception for negligent operation of a municipally owned motor vehicle, 42 Pa. Cons. Stat. § 8542(b)(1).

The motor vehicle exception provides that a municipality may be held liable for "[t]he [negligent] operation of any motor vehicle in the possession or control of the local agency." *Id.* Under Pennsylvania law, "[t]he vehicle exception to governmental immunity applies only to

situations where an employee of a local agency actually operates the vehicle in question." *Burnatoski v. Butler Ambulance Serv. Co.*, 567 A.2d 1121, 1123 (Pa. Commw. Ct. 1989). It does not apply to the operation of a vehicle by an employee of a private company under contract with the municipality, as is the case here. *See id.* Moreover, to the extent Richardson's claim concerns the intentional acts of PTS employees (e.g., being urinated upon by the PTS sergeant), it does not fall within the motor vehicle exception as these acts are not negligent acts, and any negligence by Pike County in failing to prevent such activity is divorced from the "operation" of the motor vehicle. *See Pokalsky v. Se. Pa. Transp. Auth.*, No. CIV. 02-323, 2002 WL 1998175, at *7–*8 (E.D. Pa. Aug. 28, 2002) (sexual assault of passenger by driver of municipal transport vehicle).

Accordingly, it is recommended that the motion to dismiss be granted in part and the state law negligence claim against Pike County be dismissed.

### E. Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable

or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, it is clear from the facts alleged in the amended complaint that further amendment would be futile with respect to the claims recommended for dismissal. It is therefore recommended that these claims be dismissed without leave to amend.

## IV.  RECOMMENDATION

For the foregoing reasons, it is recommended that:

1.    The County Defendant's motion to dismiss (Doc. 11) be **GRANTED in part and DENIED in part**;

2.    The plaintiff's claims against official-capacity defendants Pike County Board of Commissioners, Richard Caridi, Matthew M. Osterbert, Karl Wagner, Craig A. Lowe, Jonathan J. Romance, and Robert E. McLaughlin be **DISMISSED** as redundant, and these defendants **TERMINATED** from the case;

3.    The plaintiff's punitive damages claim against Pike County be **DISMISSED** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6);

4.     The plaintiff's § 1983 municipal liability claim against Pike County be permitted to proceed;

5.     The plaintiff's state law negligence claim against Pike County be **DISMISSED** for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); and

5.     This matter be remanded to the undersigned for further proceedings.

Dated: October 27, 2015                    *s/ Joseph F. Saporito, Jr.*
                                           **JOSEPH F. SAPORITO, JR.**
                                           **United States Magistrate Judge**

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

DARREN RICHARDSON,

     Plaintiff,

     v.

PRISONER TRANSPORT
SERVICES OF AMERICA, et al.,

     Defendants.

CIVIL ACTION NO. 3:15-cv-01061

(CAPUTO, J.)
(SAPORITO, M.J.)

## <u>NOTICE</u>

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated October 27, 2015. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: October 27, 2015          *s/ Joseph F. Saporito, Jr.*
                                 **JOSEPH F. SAPORITO, JR.**
                                 **United States Magistrate Judge**