# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DARREN RICHARDSON, | |
| Plaintiff, | NO. 3:15-CV-01061 |
| v. | (JUDGE CAPUTO) |
| PRISONER TRANSPORT SERVICES OF AMERICA, et al., | |
| Defendants. | |

## **MEMORANDUM**

Presently before me is Magistrate Judge Joseph F. Saporito, Jr.'s Report and Recommendation (Doc. 96) regarding Defendant Pike County's (the "County") Motion for Summary Judgment. (Doc. 81.) Because Richardson has failed to introduce evidence from which a reasonable jury could find the County liable for his alleged injuries, the Report and Recommendation will be partially adopted and partially rejected, and I will grant summary judgment to the County.

## I. Background

### A. Factual Background

The relevant factual background on summary judgment is as follows. In July 2009, President Judge Kameen of the Pike County Court of Common Pleas issued a bench warrant for Richardson's arrest because he had failed to pay an outstanding fine of $250 under the terms of his probation from a misdemeanor conviction. (Doc. 82 at ¶ 2.) On May 29, 2013, police stopped Richardson in Florida for rolling through a stop sign. (Doc. 9 at ¶ 14.) He was arrested and taken into custody due to the outstanding Pennsylvania bench warrant. *Id.* On May 30, 2013, Richardson signed a waiver of extradition. (Doc. 82 at ¶ 5.) He was incarcerated in a local jail for several days while he awaited extradition to Pennsylvania. (Doc. 9 at ¶ 14.)

On June 10, 2013, Richardson was transferred into the custody of Prisoner

Transport Services of America ("PTS"), a private company that had been retained by the Pike County Sheriff's Office[1] to transport Richardson from Florida to the Pike County Correctional Facility in Lords Valley, Pennsylvania. (Doc. 82, Ex. A, p. 48.) PTS transported Richardson to Pike County in two vehicles over the course of five days. *Id.*, pp. 49-55. The first vehicle, a prisoner transport bus, transported Richardson from Florida to Owensboro, Kentucky. *Id.*, pp. 50-52. Richardson claims that he and other prisoners were abused and extorted by PTS employees on the bus, and subjected to unconstitutional conditions of confinement while in transit. (*See* Doc. 9.)

After a brief wait at a local jail in Owensboro, Richardson was transported in the second vehicle from Kentucky to Pennsylvania. (Doc. 82, Ex. A, pp. 52-54.) While the PTS employees aboard this vehicle treated Richardson better, he claims that he and other prisoners were nevertheless subjected to unconstitutional conditions of confinement while en route. (*See* Doc. 9.) Richardson claims that, among other things, he was placed in unreasonably tight shackles and confined in a small cage in the back of the van, which prevented him from moving his legs or changing positions. *Id.*

On June 15, 2013, Richardson was delivered by PTS to the Pike County Correctional Facility in Lords Valley. (Doc. 82, Ex. A, p. 54.) Richardson's ankles and legs were swollen and he had difficulty walking. (Doc. 86, Ex. 1 at 33:20-34:22; Doc. 9 at ¶24.) Due to his readily apparent condition, he was immediately examined by a nurse, Linda Monaghan, upon his arrival. (Doc. 86, Ex. 1 at 39:17-24, 41:1-9.) Monaghan is employed by a company called PrimeCare Medical. (Doc. 86-10 at 6:16-22.) While examining him, Richardson claims Monaghan stated she had "seen much worse come off that bus." (Doc. 9 at ¶ 26.) Monaghan took no photos of Richardson's injuries, but commented in her treatment notes that both of Richardson's ankles were swollen and painful, and that his mobility was restricted as a result. (Doc. 9 at ¶ 26;

---

[1] Philip Bueki ("Sheriff Bueki") was the Pike County Sheriff at the time, and was still the Sheriff as of his deposition on March 1, 2017. (Doc. 86, Ex. 4 at 7:22-24.)

Doc. 86, Ex. 10.) Monaghan told Richardson to "put your feet up. You'll be fine." (Doc. 86, Ex. 1 at 55:2.) After about a week of elevating his legs as recommended, the swelling subsided. *Id.* at 55:5-10. Richardson has been diagnosed with Post Traumatic Stress Disorder resulting from this experience. (Doc. 86, Ex. 3.)

Richardson admits that prior to his claim, no one ever notified Pike County, its Sheriff's Office, or any County employee that PTS agents injured them during transport. (Doc. 82 at ¶ 22; Doc. 87 at ¶ 22.) Richardson also admits that neither Deputy Gerard Poher, who hired PTS to transport Richardson, nor anyone in the Sheriff's office, knew that PTS had a history of injuring inmates. (Doc. 82 at ¶ 23; Doc. 87 at ¶ 23.)

On May 29, 2015, Richardson filed his original Complaint in this matter. (Doc. 1.) On July 23, 2015, Richardson filed an Amended Complaint (Doc. 9), which alleges violations of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983. On July 31, 2017, Pike County filed the instant Motion for Summary Judgment. (Doc. 81.) On August 28, 2017, Richardson filed his Brief in Opposition to Pike County's Motion. (Doc. 86.) Pike County filed its Reply on September 2, 2017. (Doc. 88.)

**B. Report and Recommendation**

On February 26, 2018, Magistrate Judge Saporito issued the instant Report and Recommendation. (Doc. 96.) After reviewing the record and both parties' arguments, the Magistrate Judge first rejected Pike County's argument that Sheriff Bueki was a state, rather than local, policymaker, and thus Pike County cannot be held liable for his hiring practices under *Monell v. Dep't of Social Servs. of City of New York*. *See* 436 U.S. 658, 690 n. 54 (1978)(limiting finding of municipal liability to "local government units which are not considered part of the State for Eleventh Amendment purposes"). The County does not object to this portion of the Report and Recommendation. After reviewing the record and the relevant case law, I find that Magistrate Judge Saporito correctly analyzed this issue, and that Sheriff Bueki was a local policymaker under the Pennsylvania state constitution. *See* Pa. Const. Art. IX,

3

§ 4 (providing that "[c]ounty officers shall consist of [] sheriffs," among other officers); *Stuby v. Bedford Cnty.*, No. 12-47, 2013 WL 5724065, at *10-11 (W.D.Pa. Oct. 21, 2013). I therefore adopt this portion of the Report and Recommendation.

Next, the Magistrate Judge addressed Pike County's argument that Richardson failed to introduce sufficient evidence that the hiring of PTS as an extradition agent was the "moving force" behind Richardson's injuries. The Magistrate Judge reviewed the relevant case law and concluded that, for purposes of summary judgment, the County had actual or constructive knowledge of prior abusive treatment of prisoners by PTS. The Magistrate Judge reached this conclusion based solely on Monaghan's statement that she had "seen much worse come off that bus."

Pike County timely filed objections, arguing that (1) there is no evidence in the record other than Richarson's testimony that Monaghan made the relevant statement; (2) Monaghan was not an employee of the County, and therefore even assuming she had knowledge of abuses by PTS, her statement is inadmissible hearsay that cannot be considered on summary judgment; and (3)there is no evidence that any County employee was aware of any problems involving PTS abusing inmates in the more than 16 years that the County had worked with PTS. (Doc. 98.) Richardson filed a Brief in Opposition on March 26, 2018 (Doc. 99), and the County filed a Reply on April 9, 2018.0 (Doc. 100.) This Motion is therefore now ripe for disposition. For the reasons stated below, upon *de novo* review of the record, I will reject this portion of the Report and Recommendation and grant summary judgment to the County.

## II. Legal Standard

### A. Report and Recommendation

When objections to a magistrate judge's Report are filed, the court must conduct a *de novo* review of the contested portions of the Report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)). In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v.*

4

*Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993).

### B. Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Wright v. Corning*, 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue is "genuine" if the evidence is such that a reasonable jury could find in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Id.* at 248.

When considering whether there are genuine issues of material fact, a court is required to "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The standard for summary judgment is not whether a plaintiff would prevail at trial, but whether the Defendant has proven that no issues of material dispute exist. *Anderson*, 477 U.S. at 248. The Court must disregard all evidence favorable to the moving party that a jury is not required to believe. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000).

Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson*, 477 U.S. at 256-57. The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to prevail on a motion for summary judgment, the non-moving

party must show "specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n*, 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)). Although the non-moving party's evidence may be either direct or circumstantial, and "'need not be as great as a preponderance, the evidence must be more than a scintilla.'" *Id*. (quoting *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005)).

### III. Discussion

At issue is whether the record is sufficient to support a reasonable inference that Pike County officials had actual or constructive knowledge of past allegations of abuse by PTS such that they are liable for the decision to hire the company. "When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or formally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 658); *see also LaVerdure v. City of Montgomery*, 324 F.3d 123, 125 (3d Cir. 2003) ("Municipalities and other bodies of local government [] are liable under § 1983 only if they have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.")(internal quotation and citation removed). A municipality "cannot be deemed to have engaged in a constitutional violation by virtue of a policy [or] a custom" in the absence of a "conscious decision or deliberate indifference of some natural person." *Simmons v. City of Phila.*, 947 F.2d 1042 (3d Cir. 1991). "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate conduct*, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original). "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of

6

culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405 (citations omitted). "In any § 1983 suit, [] the plaintiff must establish the state of mind required to prove the underlying violation." *Id.* at 405.

A municipal contract such as the County's contract with PTS may constitute a municipal policy under *Monell*. *See King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012); *Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). In addition, a "custom of laxity" in performing constitutional duties may be a municipal policy. *See Colburn v. Upper Darby Twp.*, 838 F.2d 663 (3d Cir. 1988)(finding that "custom of laxity" regarding monitoring of jail cells and searching individuals taken into custody, which led to a detainee's suicide using a hidden firearm, was sufficient to plead an "official policy" under *Monell* and § 1983), abrogated on other grounds by *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993). But "[t]here can be no municipal liability where 'an otherwise sound program has occasionally been negligently administered.'" *Graham*, 358 F.3d at 385 (quoting *City of Canton v. Harris*, 489 U.S. 378, 391 (1989)).

Richardson argues that Pike County is liable for his injuries pursuant to a municipal policy of engaging the services of PTS to transport prisoners from out of state, and that the County knew or had notice of the unconstitutional practices of PTS and its employees. Pike County argues that Richardson is unable to meet the standard for imposing liability on the County because (1) there is no evidence in the record other than Richarson's testimony that Monaghan stated she had "seen much worse come off that bus;" (2) Monaghan was not an employee of the County and, therefore, even assuming she made the statement in question, the statement is inadmissible hearsay that cannot be considered on summary judgment; and (3) there is no evidence that any County employee was aware of any instance of PTS abusing inmates in the more than 16 years that the County had worked with PTS.

"Although evidence may be considered in a *form* which is inadmissible at trial,

the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D.Pa. 2014). Hearsay statements may be submitted to support or oppose a summary judgment motion, so long as the evidence to be considered is ultimately admissible at trial. *Shelton v. Univ. of Med. & Dentistry of New Jersey*, 223 F.3d 220, 223 n. 2 (3d Cir. 2000)(citing *Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc.*, 63 F.3d 1267, 1275, n. 17 (3d Cir. 1995)). In this instance, Richardson could call Monaghan as a witness to testify to her alleged knowledge of PTS abuses at trial. Although the County points out that Monaghan has been deposed in this case and she did not confirm the statement during her deposition, the inference that it is therefore unlikely she would testify to the statement at trial is not proper on summary judgment.[2] The Magistrate Judge concluded, and I agree, that Monaghan's alleged statement should not be excluded from consideration on summary judgment simply because Richardson's version of the statement has not been corroborated.

Pike County further argues that, even if Monaghan did make the alleged statement, she is not a County employee and therefore the statement is not evidence of actual or constructive knowledge by the County of problems with PTS. Richardson argues in opposition that Monaghan is a county employee because she was performing the non-delegable county function of providing medical care to inmates. A county may be liable for the constitutional torts of third-party contracted healthcare providers due to counties' non-delegable constitutional obligation to provide food, clothing, shelter, and medical treatment for inmates of correctional facilities. *See Ponzini v. Monroe Cnty.*, No. 11-413, 2015 WL 5123720 , at *10-11 (M.D.Pa. Aug. 31, 2015)(citing *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990); *Ancata v. Prison Health Servs.,*

---

[2] The County also points out that, even taking Richardson's recollection of Monaghan's statement as true, the fact that Monaghan had "seen worse" coming off of PTS buses does not necessarily compel the conclusion that she was referring to worse injuries *caused by* PTS abuses. Once again, this is not properly considered at the summary judgment stage, where all reasonable inferences must be drawn in favor of Richardson.

8

*Inc.*, 769 F.2d 700, 705 (11th Cir. 1985)). "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State." *West v. Atkins*, 487 U.S. 42, 55-56 (1988).

*West*, *Ponzini*, *White*, and *Ancata* all dealt with § 1983 claims for actions of healthcare providers which violated an inmate's constitutional right to proper medical treatment. The Courts in those cases focused on the function being served by the medical provider and found § 1983 liability for the provider's actions *in administering healthcare*. Unlike the plaintiffs in those cases, Richardson is not suing a third-party healthcare provider (in this case, PrimeCare) for his medical treatment, nor is he suing the County for medical treatment he received from PrimeCare. Instead, Richardson is suing the County for the actions of a different third-party provider (PTS) and arguing that a PrimeCare employee's alleged knowledge of abuses by PTS should be imputed to the County. Monaghan's "function within the state system" was to provide medical treatment to Richardson, not to arrange for his transportation. *See West*, 487 U.S. at 55-56. Richardson has cited no case law, and I am unable to find any, that would support liability based on such an attenuated chain of knowledge. *See Baker v. Allen*, No. 03-2600, 2006 WL 1128712, at *13 (D.N.J. Apr. 24, 2006)("The Court has not been presented with any caselaw that imputes knowledge upon prison administrators because an officer or contractor may have been put on notice of a potential issue. Rather, the law requires that a defendant in a Section 1983 case personally know of and disregard a serious risk to plaintiff's health or safety.")(citations omitted).

Richardson admits that any knowledge Monaghan had about PTS' alleged abuses was not shared by Deputy Poher, who made the decision to hire PTS, or anyone else in the Sheriff's office (Doc. 82 at ¶ 23; Doc. 87 at ¶ 23), but argues that the Sheriff's office employees' failure to thoroughly research PTS before hiring them "set in motion the mechanism through which Mr. Richardson's constitutional rights were violated." (Doc. 99, p. 12.) Richardson points out that Sheriff Bueki had researched PTS online, and in doing so "could have easily determined the history of abuse of

9

prisoners in transport committed by PTS." (Doc. 99, p. 18.) However, all of the articles cited by Richardson to establish that this information was easily available via online search were written in 2016, several years after the events in question. Richardson has submitted no evidence to show that this information was readily available at the time the County hired PTS, and even if he had, he has not introduced evidence showing that anyone in the Sheriff's office had actual knowledge of alleged abuses by PTS. *See Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976)(dismissing claims against prison warden where there was "not the slightest evidence showing that the warden had actual knowledge of the unanswered request for medical attention or that he acquiesced or participated in any denial.").

"In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton*, 489 U.S. at 391 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)(opinion of Rehnquist, J.)). The standard of municipal liability established by the Supreme Court requires Richardson to go beyond allegations of insufficient research and show that County agents hired PTS despite knowing of allegations of abuse. Richardson has introduced no evidence to establish this, and without such evidence, he cannot establish the "deliberate conduct" necessary for *Monell* liability to attach.

### III. Conclusion

For the above stated reasons, the Report and Recommendation will be adopted in part and rejected in part, and the County's Motion for Summary Judgment will be granted.

An appropriate order follows.

June 14, 2018  
Date

/s/ A. Richard Caputo  
A. Richard Caputo  
United States District Judge